BISCO'S, INC v LIQUOR CONTROL COMMISSION

Docket No. 55952. Argued March 5, 1975 (Calendar No. 9).—Decided
    January 27, 1976.

Plaintiff Bisco's, Inc. obtained a B-hotel liquor license with a
    dance entertainment permit from the Liquor Control Commis-
    sion with the approval of the Village of Emmett. The village
    filed an objection to renewal of the license based upon allega-
    tions that Bisco's entertainment violated a new village ordi-
    nance prohibiting "topless" exposure in public places. The
    Liquor Control Commission, without notice to plaintiff and
    without opportunity for a hearing, advised Bisco's that the
    license would not be renewed. The Court of Appeals, Bashara,
    P. J., and V. J. Brennan and O'Hara, JJ., dismissed plaintiff's
    complaint for mandamus against the commission and the vil-
    lage seeking to compel renewal of the license (Docket No.
    20140). Plaintiff appeals. *Held:*

    1. Plaintiff, as a liquor licensee, is entitled to due process
    protection in seeking renewal of his license because he has an
    "interest" in "property".

    2. Arbitrary and capricious actions by local legislative bodies
    in recommending to the Liquor Control Commission that a
    liquor license not be renewed are subject to judicial review.

    3. On remand, the Court of Appeals should determine
    whether the Village of Emmett was properly joined as a party
    defendant in the action for writ of mandamus against the
    Liquor Control Commission in the Court of Appeals. If the
    Court finds the village is a proper party defendant, then a
    determination should be made whether or not the village
    council afforded the plaintiff proper due process protection. If
    the case is not disposed of on other grounds, the Court should
    determine whether the village council's recommendation to the
    commission was arbitrary and capricious.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 5, 6, 8] 45 Am Jur 2d, Intoxicating Liquors §§ 32, 121, 174, 175.
[3, 4, 7, 9] 45 Am Jur 2d, Intoxicating Liquors § 32.
[9] 16 Am Jur 2d, Constitutional Law §§ 361–367, 542, 544, 550, 553.
[10] 45 Am Jur 2d, Intoxicating Liquors § 114 *et seq.*

4. Proceedings to determine whether plaintiff's request for renewal should be denied because plaintiff failed to comply with a condition of the license or statutory requirements should not be delayed by the pendency of the instant action.

Reversed and remanded for further proceedings.

Justice Levin, Chief Justice Kavanagh concurring, would also hold that a liquor licensee has a property interest in his license within the meaning of the Due Process Clause, and that an application for renewal cannot be denied without providing the licensee notice and an opportunity for hearing. They would hold that the statutory provision for license renewal is unconstitutional insofar as it fails to provide for notice and an opportunity for an evidentiary hearing before denial of an application for renewal, and would decline to save the constitutionality of the provision by reading in a particular scheme for notice and hearing, which is essentially a legislative question. They conclude that the provisions of the Administrative Procedures Act apply in the absence of other statutory provisions. Non-renewal of a liquor license is a contested case and the Liquor Control Commission is an agency within the meaning of the act. If the commission finds sufficient merit in an objection to indicate there may be cause to deny renewal of the license, it must notify the licensee of its right to an evidentiary hearing as provided in the Administrative Procedures Act. The question on review of the decision of the commission is not whether it is arbitrary or capricious, but whether it is supported by competent, material and substantial evidence on the whole record. The case should be remanded to the commission for consideration on the merits of any objections to the renewal of the license. If the commission determines there may be cause for non-renewal, an evidentiary hearing should be held under the procedures for contested cases in the Administrative Procedures Act of 1969. MCL 24.271 *et seq.;* MSA 3.560(171) *et seq.*

OPINION OF THE COURT

1. INTOXICATING LIQUORS—LICENSES—RENEWAL—CONSTITUTIONAL LAW—DUE PROCESS.

An individual seeking renewal of a liquor license under the Michigan Liquor Control Act has an interest in property such that he is entitled to due process protection (MCL 436.17; MSA 18.988, US Const, Am XIV).

2. INTOXICATING LIQUORS—LICENSES—RENEWAL—LOCAL LEGISLATIVE BODIES—DUE PROCESS.

Arbitrary and capricious actions by local legislative bodies in

recommending to the Liquor Control Commission that a liquor license not be renewed are subject to judicial review (MCL 436.17; MSA 18.988).

SEPARATE OPINION

T. G. KAVANAGH, C. J., and LEVIN, J.

3. INTOXICATING LIQUORS—LICENSES—CONSTITUTIONAL LAW—DUE PROCESS.

*A person holding a liquor license has a property interest in the liquor license within the meaning of the Due Process Clause (US Const, Am XIV; Const 1963, art 1, § 17).*

4. INTOXICATING LIQUORS—LICENSES—RENEWAL—DUE PROCESS.

*An application for renewal of a liquor license cannot be denied, under the Due Process Clause, without providing the licensee notice and an opportunity for an evidentiary hearing (US Const, Am XIV; Const 1963, art 1, § 17).*

5. CONSTITUTIONAL LAW—DUE PROCESS—PROPERTY INTERESTS.

*Property interests subject to procedural due process protection are not limited by a few rigid technical forms; "property" denotes a broad range of interests that are secured by existing rules or understandings, and the applicability of procedural due process rights is not determined by the label attached to the interest at stake, whether it is called a mere "privilege" or a "right".*

6. INTOXICATING LIQUORS—LICENSES.

*A liquor license is a franchise bestowed by the sovereign, and just as the state may choose not to issue a license, it may place reasonable conditions on it.*

7. INTOXICATING LIQUORS—LICENSES—CONSTITUTIONAL LAW—DUE PROCESS.

*Once a liquor license has been issued and expenditures have been made in reliance upon it, the licensee has acquired a property interest secured by existing rules or understandings that there is a reasonable expectation that, in practice, the license will be automatically renewed in most instances.*

8. INTOXICATING LIQUORS—LICENSES—CONSTITUTIONAL LAW—DUE PROCESS—STATUTES.

*The Michigan Liquor Control Act is unconstitutional insofar as it fails to provide notice to a liquor licensee and an opportunity for an evidentiary hearing before denial of an application for*

*renewal of a liquor license upon objection of a local legislative body (MCL 436.17; MSA 18.988).*

9. INTOXICATING LIQUORS—LICENSES—RENEWAL—ADMINISTRATIVE LAW—HEARING.

*Nonrenewal of a liquor license is a contested case; where the Liquor Control Commission finds sufficient merit in an objection to renewal to indicate there may be cause to deny renewal of the license the commission must give the licensee notice and an opportunity for an evidentiary hearing conforming with the provisions of the Administrative Procedures Act of 1969 for a contested case (MCL 24.271 et seq.; MSA 3.560[171] et seq.).*

10. INTOXICATING LIQUORS—LICENSES—RENEWAL—ADMINISTRATIVE LAW.

*The decision of the Liquor Control Commission to deny renewal of a liquor license is a final decision of an agency which affects private rights or licenses and is, accordingly, subject to direct review by the courts; the minimal standard of review under the Constitution is not whether the decision is arbitrary or capricious, but whether the decision is supported by competent, material and substantial evidence on the whole record (Const 1963, art 6, § 28, MCL 24.306; MSA 3.560[206]).*

*Durant, Talbot, Grant & McQuarrie* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Richard I. Rubin,* Assistant Attorney General, for defendant Michigan Liquor Control Commission.

*Clyne, Clyne & Mosier* for defendant Village of Emmett.

WILLIAMS, J. *(to reverse and remand).* The facts of this case[1] have been adequately outlined by my Brother, Justice LEVIN. The issues raised are essentially the same as those resolved today in *Bundo v Walled Lake,* 395 Mich 679; 238 NW2d 154 (1975).

---

[1] The case before us, like *Bundo,* " 'is not a lawsuit about topless dancing' ". *Bundo v Walled Lake, supra,* 679. The nature of the entertainment is not dispositive of issues presented to us.

In *Bundo* we held that an individual seeking a renewal of a class C liquor license under § 17 of the Michigan Liquor Control Act (MLCA)[2] has an "interest" in "property" such that he is entitled to due process protection. For the reasons set forth in *Bundo* we find the plaintiff, as a liquor licensee, is entitled to due process protection in seeking renewal of a class B-hotel liquor license.[3]

· The Court of Appeals, in dismissing plaintiff's complaint, held that it was precluded by *Hanson v Romeo Village Council*, 339 Mich 612; 64 NW2d 570 (1954), from reviewing "local legislative body's action with respect to approval of liquor licenses". In *Bundo* we held that arbitrary and capricious actions by local legislative bodies in recommending to the Michigan Liquor Control Commission (MLCC) that liquor licenses not be renewed are subject to judicial review and that *Hanson v Romeo Village Council, supra,* being inconsistent with this conclusion, "no longer can be followed", *Bundo, supra,* 679.

Therefore, we reverse the Court of Appeals and remand for further proceedings in light of our decision in *Bundo.*

On remand, the Court should determine whether the Village of Emmett was properly joined as a party defendant in an action for writ of mandamus against the MLCC in the ·Court of Appeals.

---

[2] MCLA 436.17; MSA 18.988.

[3] Unlike *Bundo,* Bisco's, Inc., liquor license had certain conditions attached to it which the plaintiff had to meet before the license could be renewed. Benjamin Bundo had no such conditions placed on his license. However, I concur in my Brother's conclusion that:

"A liquor license is a franchise bestowed by the sovereign and just as the state may choose not to issue a license, it may place reasonable conditions on it.

"But once a liquor license has been issued and expenditures have been made in reliance on it, the licensee has acquired an interest 'secured by existing rules or understandings'." *Bisco's, Inc v Liquor Control Commission,* 395 Mich 716; 238 NW2d 166 (1975).

If the Court of Appeals finds that the Village of Emmett is a proper party defendant, then a determination should be made whether or not the village council has afforded plaintiff proper due process protection as outlined in *Bundo, supra,* 679.[4]

Finally, if the case is not disposed of on other grounds, the Court should determine whether the village council recommendation to the MLCC not to renew plaintiff's license was arbitrary and capricious.

In its brief and during oral argument the MLCC took great pains to emphasize that independent of any objections the Village of Emmett had to renewal of plaintiff's license, grounds existed which would justify nonrenewal.

The commission alleged its records would reveal that "Bisco's has, in fact, failed to comply with the terms of its provisional class B-hotel license in that it is operating a bar business and has no interest in operating a hotel business".

The pendency of an action challenging the propriety of the Village of Emmett's recommendation not to renew plaintiff's license should not delay MLCC proceedings to determine whether plaintiff's request for renewal should be denied for failure to comply with the condition attached to his license or with statutory requirements for a class B-hotel license.[5]

The Court of Appeals is reversed and the matter is remanded to the Court of Appeals for further

---

[4] At page 3 of its brief the Village of Emmett suggests that plaintiff was given an opportunity to present its position at a meeting of the village council. The factual record leading up to recommendation by the village of nonrenewal should be developed to assist in determining whether or not the due process rights set forth in *Bundo* have been given.

[5] *See* MCLA 436.2h; MSA 18.972(8).

proceedings. No costs, a public question.

COLEMAN and FITZGERALD, JJ., concurred with
WILLIAMS, J.

LINDEMER and RYAN, JJ., took no part in the
decision of this case.

LEVIN, J. In 1973, Bisco's was issued a B-hotel
liquor license[1] with dance entertainment permit by
the Liquor Control Commission with the approval
of the Village of Emmett.[2]

In January, 1974, topless entertainment began
at Bisco's. Two months later, the village enacted
an ordinance banning topless exposure in public
places. The ordinance was found unconstitution-
ally overbroad and its enforcement enjoined by a
United States District Court.[3]

The village council also filed an objection with
the commission to renewal of Bisco's liquor li-
cense.[4] Pursuant to the village's request, the com-
mission advised Bisco's that its license would not
be renewed.

---

[1] The Liquor Control Commission attached to Bisco's license a
condition which had to be met before it could be renewed. A "stop"
was placed on renewal "pending either final inspection by enforce-
ment to determine that the establishment meets all statutory require-
ments for a B-hotel license or reclassification of the subject B-hotel
license to a class C license".

The commission does not contend that it gave notice of non-compli-
ance with these conditions or that its decision to not renew Bisco's
license was based on a finding of non-compliance following an eviden-
tiary hearing. *See* MCLA 436.20; MSA 18.991.

[2] MCLA 436.17; MSA 18.988.

There is an unresolved factual dispute whether Bisco's agreed to
refrain from offering topless entertainment during discussions with
the village preceding its approval of the grant of the license.

[3] *Birkenshaw v Haley*, Civil Action No. 4-71302, ED Mich, April 26,
1974.

[4] MCLA 436.17; MSA 18.988.

Bisco's sought relief in circuit court which concluded it did not have jurisdiction to issue an order to the commission.

Bisco's then filed this complaint for mandamus in the Court of Appeals.[5] That Court declined[6] to order the village to withdraw its objection or the commission to renew the license.[7]

We conclude that a liquor licensee has a property interest within the meaning of the Due Process Clause[8] and, accordingly, an application for renewal of a liquor license cannot be denied without providing the licensee notice and an opportunity for an evidentiary hearing.

---

[5] The Court of Appeals is the proper forum for maintaining an action for a writ of mandamus against the commission. MCLA 600.4401; MSA 27A.4401; GCR 1963, 714.1(1). Our disposition of this case makes it unnecessary to consider whether the Village of Emmett was properly joined as a party defendant.

[6] "It is ordered that the emergency complaint for writ of mandamus be and the same is hereby dismissed, for the reason that MCLA 436.17; MSA 18.988, as interpreted by *Hanson v Romeo Village Council,* 339 Mich 612; 64 NW2d 570 (1954) precludes review of the local legislative body's action with respect to approval of liquor licenses."

[7] Bisco's obtained a stay of proceedings from the Court of Appeals which was to be dissolved on May 23, 1974 unless Bisco's filed an application for leave to appeal in this Court before that date. Bisco's application in this Court was dated May 23, 1974, but was not received by the clerk until May 28, 1974. The commission "lifted" Bisco's license.

Section 91 of the Administrative Procedures Act of 1969 (the APA) provides:

"(1) When licensing is required to be preceded by notice and an opportunity for hearing, the provisions of this act governing a contested case apply.

"(2) When a licensee makes timely and sufficient application for renewal of a license or a new license with reference to activity of a continuing nature, the existing license does not expire until a decision on the application is finally made by the agency, and if the application is denied or the terms of the new license are limited, until the last day for applying for judicial review of the agency order or a later date fixed by order of the reviewing court. This subsection does not affect valid agency action then in effect summarily suspending such license under section 92." MCLA 24.291; MSA 3.560(191).

Section 92 of the APA is set out in fn 26, *infra.*

[8] US Const, Am XIV; Const 1963, art 1, § 17.

We would remand this case to the commission for consideration of the merits of any objections to the renewal of Bisco's liquor license and, if the commission determines there may be cause for non-renewal, for an evidentiary hearing consistent with the procedures provided for "contested cases" in the Administrative Procedures Act of 1969.[9]

I

The statute provides that the commission shall not grant a license without the approval of the local legislative body; it may, however, renew a license without such approval if the local legislative body has not objected; the commission shall revoke a license upon request of the local legislative body.[10]

This Court has held that because a liquor license is a privilege, a licensee does not have a property interest in a liquor license and, accordingly, a local legislative body may exercise the powers vested in it by the statute without according the licensee procedural due process.[11]

---

[9] MCLA 24.201, *et seq.;* MSA 3.560(101) *et seq.*

[10] "All applications for licenses to sell beer and wine or spirits for consumption on the premises, except in counties of 1,000,000 population or over, shall be approved by the local legislative body in which said applicant's place of business is located before being granted a license by the commission, except that in the case of an application for renewal of an existing license, where no objection to a renewal has been filed with the commission by the local legislative body, prior to 30 days before the date of expiration of the license, the approval of the local legislative body shall not be required. Upon request of the local legislative body in any county of less than 1,000,000 population, after due notice and proper hearing by the body, the commission shall revoke the license of any licensee granted a license to sell beer and wine or spirits for consumption on the premises." MCLA 436.17; MSA 18.988.

[11] *Commercial Acceptance Corp v Benvenuti,* 341 Mich 100, 103; 67 NW2d 129 (1954); *Morse v Liquor Control Commission,* 319 Mich 52, 66; 29 NW2d 316 (1947); *Fitzpatrick v Liquor Control Commission,* 316 Mich 83, 92; 25 NW2d 118 (1946); *Case v Liquor Control Commis-*

In *Kenosha v Bruno,* 412 US 507; 93 S Ct 2222; 37 L Ed 2d 109 (1973), where a three-judge court had held that an adversary hearing must be held before a local legislative body could deny renewal of a liquor license,[12] the United States Supreme Court remanded for reconsideration in light of *Board of Regents v Roth,* 408 US 564; 92 S Ct 2701; 33 L Ed 2d 548 (1972), and *Perry v Sindermann,* 408 US 593; 92 S Ct 2694; 33 L Ed 2d 570 (1972), issued after the three-judge court rendered its decision.

Both Roth and Sindermann were college professors who were critical of their institutions. Both were employed under one-year contracts and neither was afforded a hearing before being informed that he would not be rehired.

Roth was employed for one year at a university with a formal tenure system. Tenure accrued after four years of teaching.

Sindermann taught for ten years in a state college system with no formal tenure. He had been employed for the last four years at the same college under a succession of one-year contracts.

The Supreme Court concluded that because Roth had no "legitimate claim of entitlement" to reem-

---

*sion,* 314 Mich 632; 23 NW2d 109 (1946); *Dominick v Liquor Control Commission,* 272 Mich 122; 261 NW 269 (1935); *Scott v Arcada Township Board,* 268 Mich 170; 255 NW 752 (1934); *Johnson v Liquor Control Commission,* 266 Mich 682; 254 NW 557 (1934).

Contrast, *Napuche v Liquor Control Commission,* 336 Mich 398; 58 NW2d 118 (1953); 18 ALR2d 606; 35 ALR2d 1067; and *Dave's Place, Inc v Liquor Control Commission,* 277 Mich 551; 269 NW 594 (1936).

[12] Under the Wisconsin statute, local legislative bodies are authorized to grant liquor licenses. Wis Stat Ann 176.05(1).

Before an application for renewal of a license may be denied by the local body, the statute requires that it hold a " 'legislative type of hearing wherein one is given notice of the hearing and a fair opportunity to state his position on the issue' ". Additionally, there must be " 'a statement on the clerk's minutes as to the reason for such rejection' ". *Kenosha v Bruno,* 412 US 507, 509–510; 93 S Ct 2222; 37 L Ed 2d 109 (1973), quoting the Wisconsin statute.

ployment under his contract, he had no property interest. His contract was for one year and it had no provision for renewal.

Sindermann, however, was viewed as having acquired a sufficient property interest in the expectation of continued employment under an informal "quasi-tenure" system to require notice and a due process hearing before his employment could be terminated.

"We have made it clear, in *Roth, supra,* at 571–572, that 'property' interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, 'property' denotes a broad range of *interests* that are *secured by 'existing rules or understandings.' Id.,* at 577." *Perry v Sindermann,* 408 US 601. (Emphasis supplied.)

The label attached to the interest at stake—whether it be called a mere "privilege" or a "right"—is not determinative. The United States Supreme Court in *Roth* reiterated its rejection of "the wooden distinction between 'rights' and 'privileges' that once seemed to govern the applicability of procedural due process rights". *Board of Regents v Roth,* 408 US 571.[13]

A liquor license is a franchise bestowed by the sovereign and just as the state may choose not to issue a license, it may place reasonable conditions on it.

But once a liquor license has been issued and expenditures have been made in reliance on it, the

---

[13] *Similarly, see Viculin v Department of Civil Service,* 386 Mich 375, 386–387; 192 NW2d 449 (1971).

*See, also, Graham v Richardson,* 403 US 365; 91 S Ct 1848; 29 L Ed 2d 934 (1971); *Bell v Burson,* 402 US 535; 91 S Ct 1586; 29 L Ed 2d 90 (1971); *Shapiro v Thompson,* 394 US 618; 89 S Ct 1322; 22 L Ed 2d 600 (1969); *Sherbert v Verner,* 374 US 398; 83 S Ct 1790; 10 L Ed 2d 965 (1963).

licensee has acquired an interest "secured by existing rules or understandings".

Without a reasonable expectancy of renewal upon compliance with the pertinent ordinances, statutes, commission rules and regulations and specific conditions placed on a particular license, the risk of investing in or extending credit to a new bar would be inordinate. Bisco's was issued a one year license. It alleges that it invested a "considerable sum of money" in preparing the facilities for operation; the initial investment cannot be expected to be recouped in one year. A liquor licensee necessarily relies on the "understanding" implicit in the statute and evidenced by the apparent practice that it can in most instances expect its license to be automatically renewed. That reasonable expectation of continued enjoyment of the "benefit" conferred is similar to the interest of Sindermann in continued employment under a quasi-tenure system and is, in our view, a property interest within the meaning of the Due Process Clause.[14] Earlier precedent to the contrary, see fn 11 and accompanying text, will no longer be followed.

## II

Having concluded that a liquor licensee has a

[14] In *Manos v Green Bay,* 372 F Supp 40, 49 (ED Wis, 1974), a United States District Court concluded that a liquor licensee had a property interest in the renewal of his license:

"My findings are two-fold: first, plaintiff has shown a broad range of interests emanating from his investment in the tavern business, which are affected by the City Council's action; and second, in these situations, the existing understanding is such that once a liquor license is granted, the likelihood that it will be renewed is very great. Therefore, under my reading of both *Board of Education [sic] v Roth, supra,* and *Perry v Sindermann, supra,* plaintiff has shown that he had a 'property' interest in the renewal of his liquor license."

property interest in its license[15] which entitles it to
procedural due process, we find the statute (MCLA
436.17; MSA 18.988) unconstitutional insofar as it
fails to provide for notice and an evidentiary hear-
ing before denial of an application for renewal.

The Attorney General, representing the commis-
sion, concedes that the statute does not require
notice and a hearing before nonrenewal of a
liquor license and he does not urge this Court to
read in such a requirement to "save" the statute.

Even if we were so urged to construe the statute,
we would decline to do so. Absent a clear indica-
tion of legislative intent regarding the procedures
it would provide, or the course it would take, it is
unwise and inappropriate for this Court to adopt a
particular scheme or solution.[16] There is no need to
construct an interim procedure as the Administra-
tive Procedures Act of 1969 (the APA) provides a
workable and adequate procedure.

By declining to "save" the statute, we avoid
dealing with the complex and essentially legisla-

---

[15] We do not wish to be understood as suggesting that an applicant
for a license has a similar entitlement. Compare *Kelly Downs, Inc v
Racing Commission,* 60 Mich App 539; 231 NW2d 443 (1975), dis-
cussed in fn 21, *infra.*

[16] In *People v Bricker,* 389 Mich 524, 528; 208 NW2d 172 (1973), the
statute prohibited all abortions except where necessary to preserve
the life of the woman. The United States Supreme Court had held
such statutes unconstitutional as applied to certain abortions per-
formed by physicians. In *Bricker,* we preserved the application of the
Michigan statute in situations unaffected by the declaration of uncon-
stitutionality where the statute by its terms applied.

In this case the declaration of unconstitutionality covers all non-
renewals of liquor licenses effected without notice and a hearing by
objection of a local legislative body. The provision of the statute
permitting nonrenewal without notice and a hearing cannot, unlike
*Bricker,* constitutionally be applied as written in any situation.

In delegating legislative power to local legislative bodies the Legis-
lature did not inferentially delegate to them standby quasi-judicial
power to be exercised in circumstances not then forseen.

*Bricker* is also distinguishable because there is no need here to
construct an interim procedure—the APA is applicable.

tive question of the future respective roles and responsibilities of the commission and local communities in the new context that there is a property interest in a license once granted.[17] While a local legislative body may be called upon to act in a quasi-judicial capacity, the Legislature might well conclude that the commission is the appropriate tribunal to conduct a nonrenewal hearing now that local legislative bodies can no longer effect nonrenewal of a liquor license by legislative fiat and could only be empowered to act following notice to the licensee and a hearing, with judicial review as provided for in Const 1963, art 6, § 28 (see Part III, *infra).* Indeed, if the Legislature does not direct that nonrenewal hearings be conducted locally then under general legislation, the APA, applicable with exceptions not here pertinent to all state agencies, it is the duty of the commission to provide notice and an opportunity for an evidentiary hearing before declining to renew a liquor license.

The APA provides the procedure for state agencies hearing contested cases.[18] The commission is a state agency.[19] Licensing, defined as including re-

[17] In general under the APA the agency or a hearing officer designated by the agency presides over a contested case:

"An agency, 1 or more members of the agency, a person designated by statute or 1 or more hearing officers designated and authorized by the agency to handle contested cases, shall be presiding officers in contested cases." MCLA 24.279; MSA 3.560(179).

*See Napuche v Liquor Control Commission, supra,* where the evidentiary hearing on a charge of violation of the rules and regulations of the commission was held before a hearing examiner pursuant to "§ 5a of the Michigan liquor control act, as added by PA 1945, No 133 (CL 1948, § 436.5a [Stat Ann 1949 Cum Supp § 18.975(1)])".

[18] Chapter 4 of the APA, MCLA 24.271 *et seq.;* MSA 3.560(171) *et seq.,* provides the procedures in contested cases.

[19] Section 3(2) of the APA provides:

" 'Agency' means a state department, bureau, division, section, board, commission, trustee, authority or officer, created by the constitution, statute or agency action. It does not include an agency in the

newal of a license,[20] is a contested case where "a determination of the legal rights, duties or privileges of a named party is required by law to be made by an agency after an opportunity for an evidentiary hearing".[21] The term "law" in this context includes constitutional as well as statutory law.[22]

---

legislative or judicial branches of state government, the governor, an agency having direct governing control over an institution of higher education, or the state civil service commission."

[20] Section 5(1) and (2) of the APA provide:

"(1) 'License' includes the whole or part of an agency permit, certificate, approval, registration, charter or similar form of permission required by law, but does not include a license required solely for revenue purposes, or a license or registration issued under Act No. 300 of the Public Acts of 1949, as amended, being sections 257.1 to 257.923 of the Compiled Laws of 1948.

"(2) 'Licensing' includes agency activity involving the grant, denial, renewal, suspension, revocation, annulment, withdrawal, recall, cancellation or amendment of a license."

[21] Section 3(3) of the APA provides:

" 'Contested case' means a proceeding, including but not limited to rate-making, price-fixing and licensing, in which a determination of the legal rights, duties or privileges of a named party is required by law to be made by an agency after an opportunity for an evidentiary hearing. When a hearing is held before an agency and an appeal from its decision is taken to another agency, the hearing and the appeal are deemed to be a continuous proceeding as though before a single agency."

*See Kelly Downs, Inc v Racing Commission, supra,* at 547, holding that an application for a racetrack license is not a contested case within the meaning of the APA because under the relevant statute it is not a determination required by law to be made after an opportunity for an evidentiary hearing. The Court observed that "[o]ther sections of the racing law specifically provide for notice and hearings upon suspension of a license".

[22] Michigan's first state administrative procedures act (1952 PA 197; MCLA 24.101, *et seq.;* MSA 3.560[21.1] *et seq.),* based on the model state administrative procedure act, defined "contested case" as "a proceeding before an agency in which legal rights, duties or privileges of a specific party or specific parties are required *by law* or *constitutional right* to be determined after an opportunity for an agency hearing". MCLA 24.101(3); MSA 3.560(21.1)(3). (Emphasis supplied.)

The definition of contested case in the revised model state act *(see* 2 Cooper, State Administrative Law, Appendix, for text) and in the current Michigan APA does not contain the words "constitutional right". *(See* fn 21, *supra.)* While it might be argued that hearings which are required as a matter of constitutional as opposed to

For the reasons stated in Part I of this opinion, the Due Process Clause requires notice to the licensee and an opportunity for an evidentiary hearing before an application for renewal of a liquor license may be denied. Accordingly, non-renewal of a liquor license is a contested case and the provisions of the APA are applicable to such proceedings.

The commission is vested with the constitutional authority to "exercise complete control of the alcoholic beverage traffic within this state".[23] The commission may issue and revoke liquor licenses.[24] Applications for renewal of liquor licenses are made to the commission. Before the commission may deny an application for renewal, it must give the licensee notice and an opportunity for an evidentiary hearing conforming to the procedures for contested cases provided in the APA.[25] We do not wish to be understood as saying that the commission must hold an evidentiary hearing each

---

statutory right are no longer "contested cases" under the APA, Professor Cooper in his treatise on State Administrative Law states that "[i]n the 1961 revision of the Model Act, the draftsman concluded that the inclusion of the reference to 'constitutional right' was unnecessary, because a reference to cases where a hearing is required 'by law' includes both cases where it is required by statute and also cases where it is required by constitution". 1 Cooper, State Administrative Law, p 120.

[23] The first sentence of this constitutional provision reads:

"The legislature may by law establish a liquor control commission which, subject to statutory limitations, shall exercise complete control of the alcoholic beverage traffic within this state, including the retail sales thereof." Const 1963, art 4, § 40.

[24] MCLA 436.17; MSA 18.988 (issuance of license); MCLA 436.20; MSA 18.991 (suspension and revocation of license).

The Commission has promulgated procedural rules. See Administrative Code 1960 AACS, R 436.701 *et seq.* (Rules of Procedure on Appeal to the Appeal Board) and R 436.751 (Rules of Practice and Hearing Procedure Upon Violations).

[25] *See* fn 18, *supra.*

*See, also, Colocasides v Liquor Control Commission,* 30 Mich App 76, 80; 186 NW2d 371 (1971).

time it receives an objection to renewal of a liquor
license. But if the commission finds sufficient merit
in the objection to indicate there may be cause to
deny renewal of the license, it must notify the
licensee of its right to an evidentiary hearing as
provided in the APA.[26]

---

[26] Section 92 of the APA provides:

"Before the commencement of proceedings for suspension, revoca-
tion, annulment, withdrawal, recall, cancellation or amendment of a
license, an agency shall give notice, personally or by mail, to the
licensee of facts or conduct which warrant the intended action. The
licensee shall be given an opportunity to show compliance with all
lawful requirements for retention of the license. If the agency finds
that the public health, safety or welfare requires emergency action
and incorporates this finding in its order, summary suspension of a
license may be ordered effective on the date specified in the order or
on service of a certified copy of the order on the licensee, whichever is
later, and effective during the proceedings. The proceedings shall be
promptly commenced and determined."

The APA is based on the revised model state administrative proce-
dures act. See 2 Cooper, State Administrative Law, Appendix, for
text.

Section 92 of the APA follows closely § 14 of the revised model act.
Professor Cooper wrote:

"Section 14(c) of the Revised Model State Act further provides that
no revocation, suspension, annulment, or withdrawal of any license is
lawful unless 'the licensee was given an opportunity to show compli-
ance with all lawful requirements for the retention of the license.'
Clearly, this provision means at least that the license cannot lawfully
be revoked if the licensee can show either (a) that he has in fact
complied with the requirements imposed by the licensing authority,
or (b) that the requirements with which he has not complied are
illegal.

"Hopefully, it will be construed as meaning also that the license
may not be revoked if the licensee can make a showing that after
having received notice of threatened revocation, he has corrected the
deficiencies noted and achieved compliance with all lawful require-
ments (although, of course, in cases involving wilful misconduct it
would be expected that a mere promise of reformation would not
necessarily be sufficient to stave off revocation). The Federal Adminis-
trative Procedure Act in its cognate provision directs that, prior to
the institution of proceedings to revoke a license, facts or conduct
which may warrant such action shall have been called to the atten-
tion of the licensee and he shall have been accorded an opportunity to
demonstrate or achieve compliance with all lawful requirements." 2
Cooper, *supra,* p 496.

*See, also,* Cramton, The New Michigan Administrative Procedures
Course Handbook, pp 139–140.

## III

The question on review is not whether the decision of the commission is arbitrary and capricious. Const 1963, art 6, § 28 provides for judicial review of administrative action.

"All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record. Findings of fact in workmen's compensation proceedings shall be conclusive in the absence of fraud unless otherwise provided by law.

"In the absence of fraud, error of law or the adoption of wrong principles, no appeal may be taken to any court from any final agency provided for the administration of property tax laws from any decision relating to valuation or allocation."

The decision of the commission to deny renewal of a liquor license is a final decision of an agency which affects "private rights or licenses" and is, accordingly, "subject to direct review by the courts as provided by law". The minimal reviewing standard under the constitution is whether the decision of the commission is "supported by competent, material and substantial evidence on the whole record".

The APA further defines the scope of review:

"(1) Except when a statute or the constitution provides for a different scope of review, the court shall hold unlawful and set aside a decision or order of an agency

if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:

"(a) In violation of the constitution or a statute.

"(b) In excess of the statutory authority or jurisdiction of the agency.

"(c) Made upon unlawful procedure resulting in material prejudice to a party.

"(d) Not supported by competent, material and substantial evidence on the whole record.

"(e) Arbitrary, capricious or clearly an abuse or unwarranted exercise of discretion.

"(f) Affected by other substantial and material error of law.

"(2) The court, as appropriate, may affirm, reverse or modify the decision or order or remand the case for further proceedings." MCLA 24.306; MSA 3.560(206).

We would remand to the Liquor Control Commission for further proceedings consistent with this opinion. No costs, a public question.

KAVANAGH, C. J., concurred with LEVIN, J.